**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Reuben Ranke,**

      **Plaintiff,**         **Civil Action No. 11-12763**

    vs.               **District Judge Lawrence P. Zatkoff**

**B. Pitt, et al.,**         **Magistrate Judge Mona K. Majzoub**

      **Defendants.**
_____/

## Report and Recommendation

Plaintiff Reuben Ranke, currently a prisoner in Marion, Illinois, has filed this 42 U.S.C. § 1983 action against various defendants for allegedly violating his Fourth Amendment right to be free from unreasonable searches and seizures.[1] (Dkt. 1, 8.) Plaintiff alleges that the various defendants violated his Fourth Amendment rights when they executed searches on a UPS mailbox, two storage units, and Plaintiff's home. The defendants had judicially approved warrants, but Plaintiff argues that any reasonable officer should have realized that the warrants were insufficient to support probable cause. Before the Court is Defendant James Massey's motion to dismiss or for summary judgment. (Dkt. 16.) The Court has been referred this matter pursuant to 28 U.S.C. § 636(b)(1)(B). The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[2] (Dkt. 12.)

---

[1] The defendants Plaintiff names are B. Pitt, T. Luth, T. McInerney, C. Brooks, J. Doyle, M. Wooden, J. Massey, R. Querbeck, and the Saginaw Township Police Department.

[2] The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.     Recommendation**

For the reasons that follow, the Court recommends granting Defendant Massey's motion for summary judgment. Upon further review, the Court recommends, pursuant to Federal Rule of Civil Procedure 56(f)(3) and using this report and recommendation as notice to Plaintiff, granting summary judgment on all Plaintiff's federal claims, since Plaintiff has premised his claims against all of the defendants on the finding that the warrants lacked probable cause, and the Court recommends finding that probable cause existed to issue the warrants, therefore entitling all the defendants to qualified immunity. Because the Court recommends doing so, it further recommends not exercising supplemental jurisdiction over the state law claims. The Court therefore recommends dismissing this case in its entirety.

**II.    Report**

    **A.    Facts**

The background facts relevant to this case were summarized in Plaintiff's criminal case. The Court presents that fact summary first. The Court then supplements the fact summary with the facts Plaintiff has alleged in this case.[3] The fact summary shows how Plaintiff became involved in what led to his criminal child pornography charges.

> In March of 2008, federal authorities at a prison in New York seized the incoming mail of a prisoner named Adam Brown, as well as other documents from his cell. Brown is a convicted child pornographer. The seized mail included an Easter card with four "computer generated photographs of a minor male." The images were not attached to the affidavit, but they were described by Detective Pitt. Pitt affirmed that "[t]he images displayed that male naked, exposing his genital area and apparently masturbating." The affidavit did not indicate the estimated age of the "minor male"

---

[3]The facts are generally taken from Defendant Pitt's affidavit–the affidavit played a central role in Plaintiff's criminal motions to suppress and plays a central role here.

or explain how Detective Pitt determined that the male was a "minor." The affidavit also did not indicate whether there was a return address for the Easter card or any other information that would identify its sender.

The other documents seized from Brown's cell included an address book, which listed a "Steve Ranke with an address of 5065 State, #273, Saginaw, MI," and two hand written letters from "Steve" to Brown. The address in the book belonged to a rented mailbox at a UPS Store in Saginaw Township, Michigan. The letters were attached as exhibits to the affidavits and also described by Detective Pitt. According to Detective Pitt, the letters were reviewed by an FBI agent named Brett Banner, and "based on his training and experience in child pornography investigations, [Banner] identified the content of those letters as reflecting sexual activity between an adult male and juvenile males in musical terms." According to the affidavit, after federal prison authorities questioned Brown about the letters and the computer generated images, Brown told the officials that if they "did their due diligence on RANKE in Saginaw they were on the right track.

Detective Pitt then searched for records relating to [Plaintiff] Ranke through LIEN and Accurint databases. Both the Michigan Secretary of State and Accurint listed Defendant's mailing address as "5065 State St.," which is the location of UPS mailbox 273. [Plaintiff] was also issued a traffic ticket in Saginaw County in 2006 and provided the UPS mailbox 273 address to the officer. The Secretary of State, however, listed a second address for "Ruben Steven Ranke" as 4049 Ann Street, Saginaw. Acting on this information, Detective McInerney conducted a "trash pull" at the Ann Street address. The detective removed three white garbage bags and one yellow garbage bag from the address. The bags contained 10.9 grams of marijuana, a pair of discarded cell phones, and "several paper items with the names of Steve Fulton, Jordan Fulton, Justin Fulton, and Shelly Fulton."

On April 29, 2008, a district judge in Michigan's 70th Judicial District signed a warrant authorizing the search of the residence located at 4049 Ann Street, UPS mailbox 273, and a second UPS mailbox, number 27. The search of UPS mailbox 273, which was executed on the same day, revealed six letters and seven sheets of records. One of the letters was mailed to Defendant Ranke by a second federal inmate named William Martin. In the letter, Martin "'jok[ed]' with RANKE about . . . RANKE'S not being involved with any criminal activity." Martin signed the letter with his own name and a triangular symbol that Detective Pitt identified through investigation as the symbol for "NAMBLA," or the "North American Man-Boy Love Association." The warrant for 4049 Ann Street was executed on April 30, 2008, but apparently no evidence was seized. Investigators did, however, learn from the residents of 4049 Ann Street that [Plaintiff] lived with his father at a different address in Saginaw, 1749 Wood Street.

UPS mailbox 273 also contained records indicating that [Plaintiff] Ranke "currently

3

rented/leased" storage units 313 and 543. With this additional knowledge, Detective Pitt returned to the 70th District Court and obtained a second search warrant for storage units 313 and 543, also on April 29, 2008. The warrant was executed the next day. In storage unit 313, investigators discovered one wood box containing ropes, belts, and "adult books," and a framed black and white photograph. In storage unit 543, investigators discovered map books; several boxes of paperwork; pictures, including some depicting people who were tied up; pornographic videos; other VHS tapes; a blue "police-type" light; handcuffs; "sex toys"; and compact discs. The log does not indicate whether any of the VHS tapes, compact discs, pictures, or pornographic videos contained images of child pornography.

Also on April 30, 2008, a 70th District Court judge signed a warrant for the search of 1749 Wood Street. The warrant authorized investigators to search "[t]he entire premises and curtilage, including any and all outbuildings and or structures and common areas associated with [the] two story, single-family residence located" at that address, including any vehicles located on the property. The warrant authorized investigators to seize, inter alia,

> [a]ny and all computers, computer components, computer parts capable of storing electronic or digital images or data, . . . equipment[] that can be used in the storage, production, reproduction, transmission, or dissemination of child pornography or images of child sexually abuse activity, . . . text files, picture files in any format, system files, program files or other like files in any format, relating to the storage, discussion, dissemination or communication of . . . child pornography . . . records . . . reflecting access to or payment for online computer access or service . . . .

The warrant also authorized investigators to take pictures of the premises and to seize any documents, letters, or other printed materials "reflecting communications between 'STEVEN RANKE' and any person related to child pornography . . . ."

The affidavit in support of the warrant indicated that Detective Pitt had worked for the Saginaw Township Police Department for twenty-five years. It indicated that Pitt's assignments "include, but are not limited to, investigating complaints involving computers, checks, credit cards, bank fraud, embezzlement, identity theft, and other types of fraud." The affidavit described the address book, images, and letters seized from Brown's cell; it indicated that one letter discussed [Plaintiff's] employment working with young boys; the other letter reflected, in an expert's view, coded sexual depictions involving a man and a boy; it indicated that [Plaintiff] was connected to the Ann Street address by the secretary of state; it indicated that marijuana was found in the Ann Street trash pull; it indicated that a letter was found in UPS mailbox 273, which included a NAMBLA symbol and a "jok[e]" about [Plainiff's] lack of involvement in criminal activity; it indicated that a warrant was executed at the Ann

> Street address, but that [Plaintiff's] sister told investigators he had never lived there; it related Brown's statement that investigators should "do their due diligence" on [Plaintiff;] and it provided that 1749 Wood Street was a residence owned by [Plaintiff's] father, where [Plaintiff's] sister said [Plaintiff] lived. The affidavit continued:
>
>> I know based on my training and experience, that persons involved in child pornography routinely keep or maintain images, records, documents and or data related to that pornography at their residence or at the place they are staying and or at the residence of friends or family members or other persons associated with them in an attempt to protect those things from seizure by investigating law enforcement officers.
>
> The affidavit also attached excerpts from the two letters discovered in Brown's cell.
>
> Investigators executed the warrant at 1749 Wood Street on April 30, 2008. Most of the items seized were discovered in a bedroom on the second floor. Investigators seized bus cards in the name of Steven Westphal; two social security cards in the same name; video tapes; digital video discs; a web camera; a recording device; a Sony laptop computer; sex toys; several boxes of paperwork and letters; photographs; tools; at least eleven firearms; and a marijuana magazine. Investigations also seized other items that are listed on the search logs but illegible, including marijuana plants that were growing in a closet.
>
> On May 8, 2008, UPS mailbox 273 was searched again. Six letters were discovered, but the record does not include further information about their contents.

*United States v. Ranke*, 08-20598, 2010 WL 4386917, at *1-4 (E.D.Mich Oct. 29, 2010) (Ludington, J.) (insertions other than "Plaintiff" in original).

From his complaint, Plaintiff adds that, "[a]t all relevant times, Defendants Pitt, Luth, McInerney, Brooks, Doyle, Worden, Massey, and Querbeck were acting under color and pretense of state law." (Am. Compl. ¶ 38.)

Plaintiff further states that, on May 5, 2008, Detective Tom Luth of the Saginaw Township Police Department served Plaintiff with a notice of seizure pursuant to Michigan Compiled Law 333.7521, Michigan's Forfeiture Act, and "informed [P]laintiff that his department was seeking

5

forfeiture of some of the firearms that were seized." (Am. Compl. ¶ 51.) Plaintiff states that a forfeiture notice followed, on June 5, informing him that his property, had indeed, been forfeited. (*Id*. ¶ 52.)

Plaintiff states that the Forfeiture Act required him to post a bond of ten percent of the value of the claimed property, but not less than two hundred and fifty dollars, within twenty days. (Am. Compl. ¶ 54.) Plaintiff alleges that the Act required him to post a bond of two thousand dollars. (*Id*. ¶ 55.) Plaintiff states that he wrote to the Saginaw Township Police Department and requested a hearing, but he received no response and was unable to post the bond.

Plaintiff argues that the Forfeiture Act is unconstitutional because it "does not make provision for an indigent person to have the bond waived upon a showing in indigency." (Am. Compl. ¶ 58.) Plaintiff then states that "this [act] is unconstitutional under the United States Constitution and the Act is unconstitutional as applied to poor persons, as such poor persons are deprived of meaningful access to the court under the Act." (*Id*. ¶ 59.) Plaintiff alleges that the Act violates due process and equal access. (*Id*.)

Plaintiff requests "declaratory judgment that the seizure was illegal; that the statutory scheme that does not provide for a waiver of bond for indigents is unconstitutional and that defendants be required to return his property or a cash replacement." (Am. Compl. at 5.)

For each search and seizure, Plaintiff also alleges a state violation of his right to privacy. (Am. Compl. at 6.)

Defendant Massey has added several relevant facts about himself. He states that he is a "financial investigator for the Saginaw County Prosecutor's Office." (Def.'s Mot. to Dismiss at 6.) Defendant Massey states that his job duties "entail consulting and assisting various law enforcement

agencies with white collar crime investigation, including accounting and fraud crimes, as well as issues of asset forfeiture." (*Id.*) He adds that he also provides "search assistance to the various law enforcement agencies in Saginaw County." (*Id.*) It was in that searching assistance capacity that Defendant Massey became involved in this case. (*Id.* at 6-7.) Defendant Massey states that he assisted the Saginaw Township Police Department when it searched Plaintiff's locker and storage facilities. (*Id.*)

### B. Standards of review

#### 1. Motion to dismiss standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion

7

to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### 2. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a

> genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

Defendant Massey argues that dismissal is appropriate by two means. He first argues that the Court must dismiss Plaintiff's claims pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff underlying conviction/guilty plea has not been overturned. (Def.'s Mot. to Dismiss

at 9.) Defendant Massey then argues that he is entitled to qualified immunity because the warrants upon which he relied were supported by probable cause. (*Id*. at 10.)

> **1. *Heck* does not bar Plaintiff's claim because a finding that the defendants searched Plaintiff's mailbox and storage units without probable cause would not undermine Plaintiff's guilty plea[4]**

Defendant Massey argues that Plaintiff's claim is barred because a finding that the defendants searched his mailbox and storage units without probable cause would undermine Plaintiff's guilty plea from his criminal case. While Defendant Massey is correct in his statement of the law, he is incorrect in the application of the law to Plaintiff's case.

"Fourth Amendment claims arising out of searches occurring prior to [a plaintiff's] guilty plea and incarceration [are] precluded by *Heck v. Humphrey*, 512 U.S. 477, 487 [(1994)], on the grounds that a civil suit holding that these searches were improper would undermine the basis of [the plaintiff's] guilty plea and sentence." *Jacob v. Township of W. Bloomfield*, 531 F.3d 385, 38 (6th Cir. 2008). *See Macon v. Hopkins*, 11-1191, 2012 WL 112298, at *3 (W.D.Mich. Jan. 12, 2012) (Quist, J.) (citing *Jacob* and holding that the plaintiff's Fourth Amendment claim alleging an unreasonable search that produced evidence which lead to the plaintiff pleading guilty was barred by *Heck* "unless and until his criminal conviction has been invalidated."). *See also Wallace v. County of Calhoun*, 10-144, 2010 WL 1494771, at *6 (W.D.Mich. Apr. 14, 2010) (Jonker, J.)

---

[4]Although Plaintiff's complaint appears to focus primarily on the alleged illegal search of the UPS mailbox and storage units, Plaintiff does mention, in count seventeen, that he requests a declaratory judgment that the search of his home was illegal. To the extent that Plaintiff is alleging an illegal search of his home, *Heck* would bar that claim because a finding that the defendants illegally searched Plaintiff's home would impugn the validity of his guilty plea, which was based upon the evidence at his home.

(holding that a plaintiff could not bring a 42 U.S.C. § 1983 claim for an allegedly unreasonable search when the plaintiff pleaded guilty and his allegations against an unreasonable search would "call into question the validity of his convictions.").

To determine whether a "favorable Fourth Amendment judgment would impugn the validity of an outstanding conviction," the Sixth Circuit has instructed the courts to 'assess' the facts and prior conviction of each case. *Harper v. Jackson*, 293 F. App'x 389, 391-92 (6th Cir. 2008).

Plaintiff argues that a finding that the defendants violated his Fourth Amendment rights would not impugn his state or federal convictions. (Pl.'s Resp. at 2-3.) He argues so because "[n]one of the items seized [from] his mail box or storage units were relevant to [his] convictions (which were by plea)." (*Id.* at 2.)

Here, the Court agrees with Plaintiff. While Defendant Massey has not attached Plaintiff's plea agreement to his motion, the Court has independently found Plaintiff's plea. In his guilty plea, Plaintiff entered the following factual basis for the guilty plea:

> On or about March 19, 2008, in the Eastern District of Michigan, [Plaintiff] mailed four pictures of a minor engaging in sexually explicit conduct to an individual at a federal correctional facility in New York. The depictions were reproduced using a computer and printer at [Plaintiff's] residence. [Plaintiff] knew that the content of his mailing was child pornography. [Plaintiff's] computer also contained more than 600 images and more than 50 videos of child pornography, including images of prepubescent minors and violence.

(*United States v. Ranke*, 08-20598, Plea Agreement, Dkt. 35.) Plaintiff is correct that none of the evidence seized at the properties from which he is basing his claims was used as the factual basis for his plea. Finding in Plaintiff's favor, then, would not undermine his plea agreement; *Heck* therefore does not bar Plaintiff's claims.

11

### 2. Defendant Massey is entitled to qualified immunity because probable cause supported the search warrants for the mailbox and storage units

Defendant Massey argues that he is entitled to qualified immunity on Plaintiff's claims. He argues that he is entitled to qualified immunity because he executed the search of Plaintiff's properties pursuant to a judicially secured warrant that was supported by probable cause. The Court agrees with Defendant Massey and recommends finding that he is entitled to qualified immunity.

The doctrine of qualified immunity shields "'government officials performing discretionary functions'" from "'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court must determine "whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue 'was clearly established at the time of defendant's alleged misconduct.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and citing *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004)); *see Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008) (stating that the court "[a]ccept[s] [the plaintiff's] testimony as true and giv[es] his evidence the benefit of all reasonable inferences.") Qualified immunity is an affirmative defense–once asserted, the plaintiff bears the burden to show that the defendant is not entitled to it. *Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) (citation omitted).

In most circumstances, a judicially-secured-warrant entitles an officer to immunity "in a Section 1983 action claiming illegal search[.]" *Mills v. City of Barbourville*, 389 F.3d 568, 577 (6th Cir. 2004) (citation omitted). But if "the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable, qualified immunity is not

12

appropriate." *Id.* (citation omitted). "Under an 'objective reasonableness' test, the officers 'will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Id.* (citation omitted). "When the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . or in 'objective good faith.'" *Messerschmidt v. Millender*, ___ S.Ct. ___ , 2012 WL 55206, at *8 (U.S. Feb. 22, 2012). "[T]he threshold for establishing [an exception to the shield of immunity] is a high one." *Id.*

Whether a search warrant properly establishes probable cause to conduct a search is a legal question. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citation omitted). A decision to issue a warrant is accorded "great deference." *Id.* (citation omitted). To determine if a warrant establishes probable cause, a court "look[s] only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *Id.* (citation omitted). To establish probable cause adequate to issue a legally sufficient search warrant, "the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brooke*, 495 F.3d at 492. "Whether the affidavit gives rise to this fair probability depends on the totality of the circumstances." *Id.* (citation and internal quotation marks omitted). "The probable cause standard is a practical, non-technical conception that deals with the factual and practical considerations of everyday life." *Id.* (citation and internal quotation marks omitted).

Plaintiff argues that the warrants for the mailbox and storage units lacked probable cause and

13

that the items seized were not authorized by the warrants. (Pl.'s Resp. at 1, 16.) Plaintiff maintains that the materials seized included books, files, videotapes, and photos. (*Id*. at 18.)

The Court recommends finding that the warrants and underlying affidavit for the mailbox and storage units were supported by probable cause. The Court recommends finding so for many of the same reasons as Judge Ludington found in Plaintiff's criminal case. While the Court recognizes that Judge Ludington did not examine the warrants supporting the mailbox and storage units, the affidavit supporting the warrants is the same in all important aspects. Plaintiff's main argument, before, in his criminal motions to suppress, and now, is that the evidence supporting the underlying affidavit is insufficient to support a finding of probable cause. Judge Ludington thoroughly analyzed that argument, and the Court has reviewed that analysis and finds no reason to depart from a similar result–probable cause supported the affidavit and due deference should be given to the state judge's finding that probable cause existed to issue the warrant. The Court therefore recommends adopting the finding in *United States v. Ranke*, 08-20598, 2010 WL 4386917 (E.D.Mich. Oct. 29, 2010), that the evidence presented in Defendant Pitt's affidavit was sufficient to support a finding of probable cause, not only for the search of 1749 Wood Street, but for the UPS mailbox and storage units, as well.

In *United States v. Ranke*, the court acknowledged that the pieces of evidence, looked at separately, were not sufficient to establish probable cause for 1749 Wood Street. 2010 WL 4386917 at *8. But the court found that, looking at all the evidence together, the evidence was sufficient to establish probable cause and issue a warrant. *Id*. The court stated that "[t]he computer generated images and letters to Brown are some evidence that a crime has occurred." *Id*. The court noted that "[t]he letters implied that their author had repeatedly sexually abused young boys in the past, and

14

that the author intended to target additional boys in the future." *Id*. The court further noted that "[t]he author also indicated that he had frequent contact with potential victims[.]" The court also addressed the computer generated images and the problems with the images alone supporting probable cause. *Id*. The court then addressed the nexus between Plaintiff and the evidence. *Id*. The court stated that "the investigators connected the materials in the New York prison cell with [Plaintiff] based on the cell's occupant and of [Plaintiff's] sister." *Id*. While the court recognized that the investigator did not indicate that he was a specialist in child pornography cases, the court stated that "one need not study the subject for an extended period to learn that many of the people convicted of possessing child pornography maintain collections at their residences." *Id*. The court further stated that the investigating officer "could have included more detail" in several aspects of his affidavit, but that "[t]he actions of the investigators in relying on the warrant to search 1749 Wood Street were 'objectionably reasonable.'" *Id*. at *9 (citation omitted).

While the court opined that the state court judge may have erred in signing the warrant, the court also noted Sixth Circuit precedent holding, "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id*. (quoting *United States v. Hatfield*, 599 F.2d 759, 761 (6th Cir. 1979)). The court then concluded,

> the state court judge was not intentionally misled by the affidavit and [the affidavit] did not "so lack[] in indicia of probable cause to render official belief in its existence entirely unreasonable"; and the warrant was not facially deficient to the extent that it was not entitled to a presumption of validity.

*Id*. (second insertion in original, citation omitted).

15

The Court recommends adopting Judge Ludington's analysis of the underlying affidavit. Defendant Pitt's affidavit was the basis for both the mailbox search and the storage units search.

As for the UPS mailbox, there was a stronger link between Plaintiff and the search of it than a search of 1749 Wood Street. The mailbox address was listed in Adam Brown's address book and Plaintiff himself gave the mailbox address as his personal address. Defendant Pitt stated that, based on his training and experience, that "persons involved in child pornography routinely keep and or maintain images, records, documents and or data," at their properties. (Def.'s Mot. to Dismiss, Ex. B, UPS Mailbox Aff.) Given that Plaintiff listed the UPS mailbox as his property, and Defendant Pitt's statement, there was sufficient probable cause for the affidavit and warrant.

In the storage units affidavit, Defendant Pitt added that Plaintiff owned the storage units and then stated,

> [b]ased on my training and experience, I know that persons involved in the obtaining, manufacture, processing, compounding, sale and or delivery of illegal controlled substances routinely store those substances and firearms and proceeds at other places believed by them to be safe from police detection, specifically being rented or leased storage units.

(Def.'s Mot. to Dismiss, Ex. C, Storage Units Aff.)

Much of the former argument applies to the search of the storage units. Defendant Pitt stated the connection between Plaintiff and the storage units: "The UPS portion of the search warrant has been executed with investigators finding mail to RANKE identifying the above storage units as being currently rented/leased by him." (Def.'s Mot. to Dismiss, Ex. C, Storage Units Aff.) Given that connection, and Defendant Pitt's affidavit–that gives more than an indicia that the storage units could have contained evidence of criminal activity–and the deference the Court is to give state court

16

judges' determinations of probable cause, the Court finds that the warrant is supported by probable cause and that Defendant Massey is therefore entitled to qualified immunity for his search of the storage units.

Plaintiff also argues that the defendants, including Defendant Massey, conducted an illegal general search. (Pl.'s Resp. at 17.) Plaintiff states that the defendants seized materials, such as books, files, videotapes, and photographs that the First Amendment protects. (*Id*. at 17-18.) But other than stating in a conclusory manner that the defendants conducted an illegal general search, Plaintiff has done nothing to show that the search violated his rights. He therefore fails to state a claim of an illegal general search.

Plaintiff's claim that the defendants conducted a general search also fails because his allegations rest on the items seized, not on the places searched. While a search pursuant to a valid warrant may devolve into an invalid general search if officers flagrantly disregard the limitations of the search warrant, such a violation does not occur when an officer exceeds the scope of the warrant in the items seized. *United States v. Garcia*, 496 F.3d 495, 506 (6th Cir. 2007)(quotation marks and citations omitted). "The flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of the places searched, and not to cases in which the government indulges in excessive seizures." *Id*. (quoting *United States v. Decker*, 956 F.2d 773, 779 (8th Cir. 1992)).

Because Plaintiff is alleging that the defendants seized excessively, rather than searched excessively, Plaintiff's general search claim fails.

> **3. Because the Court has recommending finding that probable cause supported the affidavit and search warrant, the Court further recommends granting summary judgment to all of the defendants**

17

The Court further recommends granting summary judgment to all of the defendants on the 42 U.S.C. § 1983 illegal search and seizure claims.  Given that Plaintiff has solely based his claim on an lack of probable cause and the Court recommends finding that probable cause did support the affidavit and warrant, thereby entitling those relying upon that affidavit and warrant to qualified immunity, Plaintiff's 42 U.S.C. § 1983 unreasonable search and seizure claims fail.  All of the defendants are entitled to qualified immunity on these claims.  Pursuant to Rule 56(f)(3), the Court can consider summary judgment on its own after giving the parties notice and a reasonable time ro respond.  The Court therefore recommends that this report and recommendation serve as notice to the parties and that the fourteen days for objections be a reasonable time to respond.

### 4. The Court recommends declining supplemental jurisdiction over the remaining state law claims

The Court recommends declining to exercise jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c).  The Court recommends dismissing the Michigan Compiled Laws § 333.7521 claim because it is a novel claim best left to state court adjudication.  The Court further recommends dismissing the state invasion of privacy claim because the Court finds that it has recommended dismissing all other claims against over which it had original jurisdiction.

### D.     Conclusion

For the above-stated reasons, the Court recommends granting Defendant Massey's motion for summary judgment. Upon review of the case, the Court further recommends, pursuant to Federal Rule of Civil Procedure 56(f)(3), using this report and recommendation as notice to Plaintiff, granting summary judgment on all Plaintiff's federal claims, since Plaintiff has premised his claims against all of the defendants on the finding that the warrants lacked probable cause, and the Court

finds that probable cause existed to issue the warrants, therefore entitling all the defendants to qualified immunity. Because the Court recommends doing so, it further recommends not exercising supplemental jurisdiction over the state law claims. The Court therefore recommends dismissing this case in its entirety.

### III.     Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 5, 2012          s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Ruben Ranke and Counsel of Record on this date.

Dated: March 5, 2012          s/ Lisa C. Bartlett
                                          Case Manager